# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DIEGO TIJERINA,

      Plaintiff,

v.                                                                                                                  CV 20-0706 JAP/JHR

STATE OF NEW MEXICO CORRECTIONS
DEPARTMENT, CHRIS MARQUEZ and
JOSE CORDERO,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant State of New Mexico Corrections Department's Motion to Compel Independent Psychological Examination of Plaintiff [Doc. 42], filed March 2, 2021, and Defendants' Opposed Motion for Extension of Time for Defendants to Disclose Expert Witness(es) [Doc. 43], filed March 4, 2021. Plaintiff Tijerina responded to both Motions and Defendants have replied. [*See* Docs. 47, 48, 51, 55]. Also before the Court is Plaintiff's Motion to Exclude Defendants' Expert Samuel Roll, Ph.D., [Doc. 73], filed May 26, 2021. Having considered the parities' briefing and all pertinent authority, the Court **grants** Defendants' Motions and **denies** Plaintiff's **without prejudice**, for the following reasons.

### I.     BACKGROUND

Diego Tijerina was an inmate in custody of the New Mexico Department of Corrections from May 15, 2019 to February 20, 2020. [*Complaint for Deprivation of Civil Rights,* Doc. 1-2, p. 2]. Chris Marquez and Jose Cordero were employed as correctional officers at the time. [*Id.*]. On June 21, 2019, Tijerina was transported by van from a facility in Los Lunas en route to another in Clayton; Marquez drove the van and Cordero rode along as an escort. [*Id.*, pp. 2-3]. At one

point, an object struck the bottom of the van causing wood shards to spray up from the floor. [*Id.*, p. 3]. Soon after, a rear tire blowout forced the van to pull to the side of the road. [*Id.*, p. 4].

Tijerina reported to Marquez and Cordero that his neck was injured by the sudden movement of the van and that he and others had been hit by shards of wood; Tijerina says that Marquez dismissed their complaints with insults. [*Id.*, p. 5]. The group waited over two hours for a replacement van to arrive, then waited in the replacement van without ventilation for another 90 minutes to two hours during repairs. [*Id.*, pp. 5-6]. Tijerina did not receive water while waiting. [*Id.*, p. 7]. The inmates were then taken to the prison in Santa Fe in the hot replacement van; Tijerina says he and other suffered greatly from the heat but their requests for relief were ignored. [*Id.*, pp. 6-8].

In Santa Fe, Tijerina says, "[a]ll inmates were taken to see medical personnel at PNM upon arrival" but Tijerina "did not see a doctor." [*Id.*, p. 8]. He says he got "a single small cup of water." [*Id.*]. The inmates got back into the unventilated replacement van, according to Tijerina, only because Marquez and Cordero lied that it was not the same van. [*Id.*, pp. 8-9]. Marquez and Cordero ignored their protests when the inmates discovered the deception. [*Id.*, p. 9]. Tijerina says that he was overcome by the heat and lost consciousness, fell, and hit his head, while Marquez and Cordero failed to stop and render aid. [*Id.*, p. 10]. Tijerina says that he woke upon arrival as fresh air came in through the rear doors as they were opened. [*Id.*].

Medical staff saw all inmates at their destination. [*Id.*]. According to Tijerina, they noted that he was lightheaded, dizzy, and had a headache, as well as "dangerously elevated" blood pressure and an abnormal EKG. [*Id.*, p. 11]. Tijerina was transported by ambulance to the hospital, where he displayed the same symptoms. [*Id.*]. He was discharged the same day with instructions to return if he developed new symptoms. [*id.*, p. 12]. Upon his return to the facility in Clayton,

Tijerina was placed in solitary confinement until his eventual discharge from custody, never leaving his cell from June 24, 2019 through February 20, 2020. [*Id.*].

Tijerina filed a complaint against the Department of Corrections, and against Marquez and Cordero in their individual capacities, in New Mexico's First Judicial District Court on June 3, 2020. [Doc. 1-2, pp. 1-2]. He claims continuing and permanent injuries as well as post-traumatic stress disorder from his experience during transport. [*Id.*, pp. 12-13]. He asserts claims of cruel and unusual punishment by Marquez and Cordero in violation of the Eighth Amendment, and negligent maintenance and operation of a motor vehicle by all Defendants. [*Id.*, pp. 13-21]. Tijerina demands compensatory and punitive damages, attorney fees and costs. [*Id.*, p. 22].

Defendants removed the case to federal court on July 16, 2020. [Doc. 1]. They filed an answer on July 17, 2020, [Doc. 8], and, with leave of court, [*see* Doc. 12], an amended answer on August 19, 2020. [Doc. 13].

The Corrections Department filed a *Motion to Compel Independent Psychological Examination of Plaintiff* on March 2, 2021. [Doc. 42]. Tijerina filed a response on March 15, 2021, [Doc. 47], and the Corrections Department filed a reply on March 22, 2021. [Doc. 51]. Defendants then filed an *Opposed Motion for Extension of Time for Defendants to Disclose Expert Witnesses* on March 4, 2021. [Doc. 43]. Tijerina filed a response on March 15, 2021, [Doc. 48], and Defendants filed a reply on March 24, 2021. [Doc. 55].

Defendants' expert disclosure deadline was March 18, 2021, and the discovery deadline was April 19, 2021, according to the scheduling order. [Doc. 30]. The discovery motions deadline was a week later. [*Id.*]. The pretrial motions deadline for non-discovery issues was May 26, 2021, when Tijerina filed his Motion to Exclude Dr. Roll from trial. [Doc. 73]. Defendants' response to Tijerina's Motion is not yet due.

## II. MOTION FOR INDEPENDENT PSYCHOLOGICAL EXAMINATION

The Corrections Department seeks an independent psychological examination of Tijerina under authority of Fed. R. Civ. P. 35. [Doc. 42 p. 1]. It asserts that Tijerina has alleged prior diagnoses of Post-Traumatic Stress Disorder and claimed increasing and extreme anxiety since the Corrections van transport and is refusing to participate in an in-person psychological examination with its expert, Dr. Samuel Roll, Ph.D., unless Dr. Roll agrees to record the interview or allow Plaintiff's counsel to be present. [Docs. 42 pp. 1-2, 42-1 pp. 2-3, 42-2 p. 2-3, 47 p. 1]. Defendant argues that Tijerina has disclosed an expert to testify to his mental status and the effect of the van transport, and that the examination by Tijerina's expert was not recorded. [Doc. 42 pp. 2-7, 51 p. 5]. Further, Dr. Roll says that the presence of another person or a recording device could distort Tijerina's responses. [Doc. 42-5 p. 1].

Tijerina concedes that his claims have put his mental status in issue for the purposes of Rule 35. [Doc. 47 p. 2]. Nonetheless, he argues that the Corrections Department has not shown good cause for an independent psychological examination, in part because the Corrections Department could simply rely upon Tijerina's own medical records, expert report, and deposition testimony. [Doc. 47 pp. 2-3]. As noted, Tijerina objects to a psychological examination unless the interview portion is video recorded to assure that the examiner does not manipulate the examination. [Doc. 47 pp. 3-6]. Tijerina cites his long history of mental illness and learning disorders and his poor memory as circumstances justifying video recording. [Doc. 47 p. 4]. He disputes the risk of distortion because of recording, though noting that his own expert did not record his responses to his earlier exam; Tijerina also proposes that his prior exam, which was conducted via Zoom videoconference, "actually demonstrates the ability to use recording devices

4

without concern of altering responses." [Doc. 47, p. 5]. Tijerina's expert testified in his deposition that in-person and Zoom evaluations are substantially equivalent. [Doc. 47 p. 5, 47-1 p. 6].

### III. MOTION TO EXTEND EXPERT DISCLOSURE DEADLINE

Defendants seek an extension of their deadline to disclose expert witnesses until Dr. Roll can conduct his examination. [Doc. 43, p. 1]. The extension only makes sense if the Court grants their motion to compel the independent medical examination of Tijerina. [Doc. 43, p. 2]. There is no current setting for trial or the final pretrial conference. [Doc. 43, p. 2]. Defendants assert that they would be prejudiced if the extension were not granted but, if it was, there would be no prejudice to Tijerina. [Doc. 43, pp. 2-3; Doc. 55, p. 4]. Defendants point out that they attempted to schedule the examination with Dr. Roll soon after they received notice of Tijerina's expert's opinions in February 2021, almost two months before the close of discovery. [Doc. 43, p. 1; Doc. 55, pp. 1-2].

Tijerina opposes the extension on two grounds: that Defendants cannot meet their burden for an extension under the Federal Rules of Civil Procedure, [Doc. 48, p 2]; and that he would be prejudiced by the delay that would result. [Doc. 48, pp. 4-5]. Defendants propose that Tijerina is applying the wrong standard for this extension request, [Doc. 55, pp. 1-2], and that their rationale satisfies the "good cause" standard supplied by Rule 16. [Doc. 55, pp. 2-3].

### IV. MOTION TO EXCLUDE DR. ROLL FROM TRIAL

Tijerina moves the Court to exclude Dr. Roll from trial because Defendants have not fully disclosed the substance of his testimony. [Doc. 73, pp. 1-2]. All Defendants have provided at this point is Dr. Roll's curriculum vitae. [*Id.*].

## V. ISSUES PRESENTED

1. Has the Corrections Department shown good cause for its proposed independent psychological examination?

2. Has Tijerina shown good cause to video record the interview portion of the examination?

3. Has the Corrections Department established good cause to modify the scheduling order to extend its expert deadline to allow them to disclose their expert's report?

4. If relief is granted to Defendants, is Tijerina's Motion moot?

5. Should the Court award attorneys' fees and costs against Tijerina?

## VI. ANALYSIS

Having considered the issues, the Court concludes as follows:

### A. *The Corrections Department has Established Good Cause for a Psychological Examination.*

Independent medical or psychological examinations of a party by his adversary are permitted under Federal Rule of Civil Procedure 35. The Rule requires a showing that the subject party's mental or physical condition is "in controversy" and that the movant has "good cause." Fed. R. Civ. P. 35. The Supreme Court posited roughly 60 years ago that "[a] plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). "[A] crucial element necessary to ordering a mental examination is the existence of an allegation of present, ongoing, or permanent mental injury or disorder." *Cameron v. Gutierrez*, 2020 WL 5326946, at *3 (D.N.M. Sept. 4, 2020).

Tijerina is claiming past and current PTSD resulting from Defendants' conduct. In these circumstances, the Corrections Department has established that Tijerina's mental state is in controversy and that a defense examination is necessary to test the veracity and accuracy of Tijerina's allegations and his own expert's testimony. The Corrections Department has thus shown good cause for an examination under Rule 35. Tijerina's argument that Defendants can surmise the extent of his condition through review of his own expert's report and from his medical records is unavailing where the elements of Rule 35 are met and no extenuating circumstances are apparent.

**B.** *Tijerina has not Established Good Cause to Record any Portion of the Examination.*

Under that Rule 26(c), a court may issue any order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c)(1). "[T]he party seeking the presence of a third party [or video recorder] at a Rule 35 examination … sustains the burden of convincing the court that good cause exists for a protective order and that such a third-party presence is necessary." *Hatchett v. United Parcel Serv., Inc.*, 2014 WL 12789702, at *2 (D.N.M. July 18, 2014) (quoting *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 395 (S.D. Tex. 2013)). Thus, Tijerina bears the burden to show a need for recording the examination.

Dr. Roll says that recording the interview will interfere with Tijerina's responses to questioning, and Tijerina disagrees. Yet, Tijerina's own expert declined to record the earlier examination. Beyond general concerns typical to any plaintiff with a history of psychological complaints, Tijerina provides no evidence supporting the specific need to record the interview in this case, or that he is incapable of understanding the questions being asked or advocating for himself outside the presence of his counsel or a recording device. Furthermore, he has not

7

explained how any advantage of recording would outweigh its distorting effect upon Dr. Roll's examination. Therefore, permission to record any portion of the examination is denied. *See, e.g.*, *Hatchett v. United Parcel Serv., Inc.*, 2014 WL 12789702, at *3 (D.N.M. July 18, 2014) ("The Court is persuaded by the reasoning in those cases which 'favor the exclusion of the plaintiff's attorney from such an exam absent special circumstances' on the grounds of undue distraction, undermining the accuracy of the process, raising ethical considerations, and creating an unnecessarily adversarial examination. Plaintiff has submitted no evidence which would justify a Court to believe that presence of his counsel would be more advantageous to the discovery process than deleterious.").

### C. *There is Good Cause to Extend Defendants' Deadline to Disclose their Expert.*

Scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 544, 548 (D.N.M. 2011). "Good cause" requires a showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required." *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996) (quoted case omitted). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal quotation omitted).

Here, the evidence shows that Tijerina disclosed his expert on February 16, 2021, and Defendants almost immediately began attempting to schedule the examination by Dr. Roll. Defendants were unable to do so because of Tijerina's resistance. Defendants have been diligent in pursuing discovery. Therefore, Defendants have shown good cause to extend their expert disclosure deadline until such time as the examination can take place.

### D. *Tijerina's Motion is denied without prejudice.*

Tijerina's Motion seeks to exclude Dr. Roll from trial because Defendants violated the disclosure requirements of the Federal Rules. The Court's extension of discovery deadlines provides another opportunity for Defendants to meet their disclosure obligations. Tijerina's motion is therefore denied without prejudice because it is moot at this time.

### E. *Defendants may file a Motion for Fees and Costs Associated with their Motions.*

Under Federal Rule of Civil Procedure 37(a)(5)(A), "[i]f the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurrent in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Thus, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at *4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, Federal Practice and Procedure (3d ed. 2010), § 2288, n.17), unless the losing position was substantially justified or an award of expenses would otherwise be unjust. *Id.* at *5. "The Supreme Court has described the test of 'substantially justified' under Rule 37 as 'a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.'" *Lester v. City of Lafayette, Colo.*, 639 F. App'x 538, 542 (10th Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Tijerina's position was not substantially justified in demanding that the examination be recorded because the Corrections Department had good cause to examine him and to exclude a video recorder and he did not have persuasive evidence supporting his position that it was

9

reasonable to refuse the examination unless it was recorded. Defendants have been diligent in attempting to schedule Tijerina's examination, negating Tijerina's opposition to extending the deadline. Therefore, upon presentation of a proper motion, fees and costs will be awarded against Tijerina for Defendants' present motions because his resistance to scheduling the examination was not substantially justified.

Defendants may file a motion for fees and costs **within 30 days** of the entry of this Order. Defendants should keep in mind that sanctions imposed pursuant to civil procedures must be compensatory rather than punitive, *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017), unless contemptuous conduct is shown. *See Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012); *see also Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438 (10th Cir.1998). "In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) (quoted authority omitted). "A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Id.* "That kind of causal connection … is appropriately framed as a but-for test: [t]he complaining party … may recover only the portion of his fees that he would not have paid but for the misconduct. *Id.* at 1187.

> This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment.... [T]rial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is)…. The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection.[] Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Id.* Though the Court employs its reasoned discretion, it is up to the movant for fees to "prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d

1505, 1510 (10th Cir. 1995) (citation omitted); *see Diaz v. Metzgar*, 2014 WL 12782782 at *7 (D.N.M. 2014) ("The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.") (quoting *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1201 (10th Cir. 1986)). The Court will then reach a "lodestar figure," which is the product of reasonable hours expended times a reasonable hourly rate. *See Mares*, 801 F. 2d at 1201. "The setting of a reasonable hourly rate is within the district court's discretion…. [and] [h]ourly rates must reflect the prevailing market rates in the relevant community." *Jane L.*, 61 F.3d at 1510 (citation omitted).

An applicant lawyer must keep "meticulous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* (citation omitted); *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."). This concept is particularly apt "where a party is seeking to have his opponent pay for his own lawyer's work." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998). The lawyer's billing statement should "include the specific amounts of time allocated to each individual task." *Id.*[1]

---

[1] In fact, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Jane L.*, 61 F.3d at 1510 (citation omitted); *see Case*, 157 F.3d at 1252 (declining to award fees where the party failed to establish that an attorney's work was reasonably necessary to their case and because her billing statements were "not clear."). "A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares*, 801 F. 2d at 1203 (citations omitted); *Case*, 157 F.3d at 1252. As examples, the *Mares* court pointed to cases in which the Supreme Court reduced hours to account for a lawyer's lack of experience, for a failure to keep contemporaneous time records, and for unreasonable, unproductive or excessive time. *Mares*, 801 F. 2d at 1203 (citations omitted). Once the Court has adequate time records before it, it must ensure that the winning attorneys have exercised "billing judgment," which "consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. As the Supreme Court has stated, "[h]ours that are not properly billed to one's *client* also are not properly billed to

## VII. CONCLUSION & ORDER

As the Supreme Court stated long ago, "the deposition-discovery rules are to be accorded a broad and liberal treatment, … to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15 (1964) (quoted case omitted). To this end Tijerina had a duty to comply with Defendants' reasonable discovery requests, including submitting to a psychological examination because he placed his mental condition at issue in this case. Defendants were diligent in attempting to schedule the examination before expiration of the discovery deadline.

Wherefore, Defendant State of New Mexico Corrections Department's Motion to Compel Independent Psychological Examination of Plaintiff [Doc. 42], and Defendants' Opposed Motion for Extension of Time for Defendants to Disclose Expert Witness(es) [Doc. 43], are **granted** and Plaintiff's Motion to Exclude Defendants' Expert Samuel Roll, Ph.D., [Doc. 73], is **denied without prejudice**.

SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

---

one's *adversary*[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoted authority omitted) (emphasis in original); *see also Mares*, 801 F. 2d at 1204 (fee awards "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client.") (quoted authority omitted). Thus, it is not proper to bill for every hour logged where adjustments should be made for lack of experience or conducting general research. *See Mares*, 801 F. 2d at 1204 (citations omitted). A "district court may also reduce the reasonable hours awarded if 'the number of compensable hours claimed by counsel includes hours that were unnecessary, irrelevant and duplicative.'" *Case*, 157 F.3d at 1250 (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)).